**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CAMILLE C., | |
| Plaintiff, | Case No. 2:23-cv-01033 (BRM) |
| v. | **OPINION** |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration, | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Camille C.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("Commissioner"[1]) denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83.[2] (ECF Nos. 1, 7.) The Commissioner filed an opposition. (ECF

---

[1] Martin O'Malley became Commissioner of the Social Security Administration ("SSA") on December 20, 2023. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted as Defendant (previously, Kilolo Kijakazi) in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Plaintiff's claim was initially decided by Administrative Law Judge David F. Neumann ("ALJ Neumann") who denied Plaintiff's claim. (ECF No. 4 (Transcript of Proceedings ("Tr.")) at 9–24.) The Appeals Council subsequently affirmed ALJ Neumann's decision, at which time ALJ Neumann's decision became the final decision of the Commissioner. (*Id.* at 1–6.) Plaintiff appealed ALJ Neumann's decision to this Court, and on June 22, 2020, the Honorable Stanley R. Chesler, U.S.D.J., vacated ALJ Neumann's decision and remanded this action for further proceedings consistent with the Court's decision. (*Id.* at 375–90; *see also* No. 18-cv-14678, ECF No. 25.) Following remand, Administrative Law Judge Sharon Allard ("ALJ Allard") denied

No. 12.) As of the date of this Opinion, Plaintiff has not filed a reply. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

I.   BACKGROUND

A.   **Procedural History**

This case arises out of Plaintiff's challenge to the Commissioner's second denial of her application for SSI benefits. (*See* ECF No. 1.) On October 30, 2014, Plaintiff applied for SSI benefits. (ECF No. 4 (Transcript of Proceedings ("Tr.")[3] at 137–42.) Plaintiff initially alleged a disability onset date of January 1, 2002, but later amended her disability onset date to the date of her application, October 30, 2014. (Tr. at 29–30, 137, 317–18.) The Social Security Administration ("SSA") initially denied Plaintiff's claim on February 27, 2015, and upon reconsideration on June 26, 2015. (*Id.* at 79–87.)

Plaintiff filed a written request for a hearing (*id.* at 88–91), and on May 23, 2017, ALJ Neumann held a hearing for Plaintiff's claim (*id.* at 25–56). On July 10, 2017, ALJ Neumann issued a decision denying Plaintiff's claim, finding Plaintiff was not disabled within the meaning of the Act. (*Id.* at 9–24.) On August 14, 2018, the Appeals Council denied Plaintiff's request for review and affirmed ALJ Neumann's decision, at which time ALJ Neumann's decision became the final decision of the Commissioner. (*Id.* at 1–6.) Having exhausted her administrative

Plaintiff's claim in a decision dated November 23, 2022, which decision became the final decision of the Commissioner on January 23, 2023. (*See* Tr. at 293–311.)

[3] The administrative record is set forth in this transcript. (*See generally* ECF No. 4.)

2

remedies, Plaintiff filed her initial appeal with this Court, appealing ALJ Neumann's decision. (*Id.* at 375–80; *see also* No. 18-cv-14678, ECF No. 1.)

On June 22, 2020, the Honorable Stanley R. Chesler, U.S.D.J., vacated ALJ Neumann's decision and remanded this action for further proceedings consistent with the Court's decision. (Tr. at 381–90; *see also* No. 18-cv-14678, ECF No. 25.) Judge Chesler concluded ALJ Neumann's residual functional capacity ("RFC") determination was not supported by substantial evidence, finding: (1) Plaintiff's treating psychiatrist "Dr. Quintana opined that Plaintiff was unable to work" and ALJ Neumann did not have a legally valid reason for rejecting Dr. Quintana's opinion; (2) consultative examiner Dr. Yalkowsky reported Plaintiff had "difficulties with concentration and gave [her] diagnoses of bipolar disorder and attention deficit [hyperactivity] disorder" and that ALJ Neumann "reported some of Dr. Yalkowsky's findings [but] nullified all of them" because although ALJ Neumann stated he gave Dr. Yalkowsky's opinion "significant weight, neither [his] explanation of the decision nor the RFC determination itself [bore] that out"; and (3) SSA agency reviewer Dr. Starace found Plaintiff had "moderate difficulties with sustained attention but inexplicably concluded that Plaintiff could sustain attention." (*Id.*) Judge Chesler further stated while ALJ Neumann described what Dr. Starace found, he omitted Dr. Starace's finding that Plaintiff's ability to maintain concentration and attention was moderately limited. (*Id.* at 388.) Ultimately, Judge Chesler concluded ALJ Neumann's RFC determination "failed entirely to reflect the findings of Plaintiff's treating psychiatrist, having rejected them, nullified the findings of the consultative examiner, and relied on the opinion of an agency reviewer who did not review the complete record and whose final assessment is contradicted by his findings." (*Id.*)

Following Judge Chesler's decision and remand order, the Appeals Council vacated ALJ Neumann's decision and remanded Plaintiff's case to a different ALJ for further proceedings

consistent with the Court's order. (*Id.* at 392–96.) The Appeals Council stated the new ALJ "will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.* at 394.) On May 19, 2022, ALJ Sharon Allard held a hearing by telephone, due to the COVID-19 pandemic. (*Id.* at 312–52.) Plaintiff, Plaintiff's counsel, and an impartial vocational expert all participated in the telephonic hearing. (*Id.*) Plaintiff appeared by telephone and testified at the hearing. (*Id.*)

On November 23, 2022, ALJ Allard issued a decision finding Plaintiff was not disabled within the meaning of the Act. (*Id.* at 293–311.) On January 23, 2023, ALJ Allard's decision became the final decision of the Commissioner. (*See id.* at 293–94.) On February 22, 2023, Plaintiff filed a Complaint with this Court, this time appealing ALJ Allard's decision. (ECF No. 1.) On June 15, 2023, Plaintiff filed a brief in support of her appeal. (ECF No. 7.) On August 14, 2023, the Commissioner filed an opposition. (ECF No. 12.) As of the date of this Opinion, Plaintiff has not filed a reply.

## B.    Factual Background

At the time of ALJ Allard's decision dated November 23, 2022, Plaintiff was a thirty-one-year-old female who had not engaged in substantial gainful activity since October 30, 2014. (Tr. at 298, 305.) Plaintiff has a high school education but no past relevant work. (*Id.* at 302, 305, 328–29.) Though Plaintiff has worked some part-time jobs, she has never held a job for more than about a month at a time, and has never held full-time employment, due to her mental health issues. (*Id.* at 302, 323–24, 328–29.)

Plaintiff filed for SSI benefits in October 2014, claiming she had the following conditions, beginning January 1, 2002 (later amended to October 30, 2014): bipolar disorder; social anxiety;

anxiety; depression; and attention-deficit/hyperactivity disorder ("ADHD").[4] (*Id.* at 137–42, 296–98, 302.) Plaintiff's medical records show she was diagnosed with bipolar disorder, anxiety, and depression as a child and was placed on medications for these diagnoses. (*Id.* at 302.) On March 20, 2012, Plaintiff was admitted to care as a transfer from St. Peter's Hospital after a suicide attempt a few days earlier. (*Id.*; *see also id.* at 230–60.) Upon discharge, Plaintiff's "diagnoses included bipolar disorder, depressed, severe, without psychotic features; ADHD; rule out PTSD; and rule out alcohol abuse." (*Id.* at 303.)

A few months later, on June 14, 2012, Plaintiff was discharged from Lighthouse Care Center of Conway, where she was involuntarily admitted "after she walked about 12 miles, confused, with suicidal thoughts of being run over." (*Id.* at 303; *see also id.* at 261–75.) At the time, Plaintiff reported feeling depressed and intensely anxious and reported hearing voices. (*Id.*) She had been on the medications Lithium and Seroquel for a while at that point. (*Id.*) Plaintiff's "discharge diagnoses included bipolar disorder, mixed; generalized anxiety disorder; and personality disorder." (*Id.*)

In December 2014, Plaintiff stated in a SSA Function Report form that her "conditions adversely affect[ed] her abilities to understand, remember, complete tasks, concentrate, and follow instructions." (*Id.* at 302; *see also id.* at 175–82.) However, Plaintiff stated her "conditions [did] not adversely affect her abilities to lift, squat, walk, sit, climb stairs, see, use hands, bend, stand,

---

[4] ALJ Allard also noted "[t]here is indication in the record of a potential hand impairment" but stated because Plaintiff's "medical reports do not show any treatment or evaluation for carpal tunnel syndrome or other physical symptoms[,] . . . the claim of [a hand] impairment is a non-medically determinable impairment." (Tr. at 299.) As such, this "impairment must be established by objective medical evidence from an acceptable medical source[,]" which standard ALJ Allard found Plaintiff did not meet with respect to any hand impairment. (*Id.*) Plaintiff does not contest this finding on appeal. (*See* ECF No. 7.)

reach, kneel, talk, hear, and get along with others." (*Id.*) Also in December 2014, Plaintiff's mother stated in a third-party function report that Plaintiff's "medical conditions adversely affect her abilities to remember, complete tasks, concentrate, understand, and follow instructions"; she "uses poor judgment as to weather; she needs reminders to eat; dental hygiene is a concern;" she does not drive; and she "cannot pay bills, handle a savings account, [or] use a checkbook/money order." (*Id.* at 304–05; *see also id.* at 183–90.) However, Plaintiff's mother also stated Plaintiff can dress herself, prepare her own meals, clean her room, do laundry, go outside, shop in stores, and count change. (*Id.*)

In 2015, SSA agency consultants Jocelyn Fierstien and Dr. Robert Starace reviewed Plaintiff's available medical records and opined that Plaintiff had "severe affective disorders; severe anxiety disorders; and severe organic mental disorders." (*Id.* at 304; *see also id.* at 57–77.) Regarding mental limitations, they found Plaintiff had "mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration." (*Id.*)

In a February 2015 consultative psychological evaluation report by Dr. Steven Yalkowsky, Plaintiff noted a history of anxiety, depression, and bipolar disorder. (*Id.* at 303; *see also id.* at 276–79.) At the time, she reported she was taking Clonazepam as prescribed by her primary care physician but that she had stopped taking other prescription medications "due to the severity of the side effects." (*Id.* at 303.) Dr. Yalkowsky did not specifically opine on Plaintiff's ability to interact with others but "noted an 'adequate' manner of relating during his examination." (*Id.* at 300, 304.) Plaintiff reported "she does not engage in social activities" and does not feel comfortable in public but stated she has some friends who either visit her at her home or she visits

them at theirs and that she has two friends from high school whom she texts infrequently. (*Id.* at 300.) Plaintiff also said she goes on walks once a week. (*Id.*)

Upon a mental status examination, Dr. Yalkowsky noted Plaintiff was pleasant and cooperative, with age-appropriate social skills and that her "[t]hought processes were logical, coherent, and goal directed." (*Id.* at 303.) She could recall five digits forward and two backward, but "made several arithmetic errors on serial threes" and "could not spell the word 'world' forward or backward." (*Id.*) Dr. Yalkowsky found Plaintiff "had 'significant evidence' of ADHD based on difficulty performing clinical tasks, but also stated that [Plaintiff] had no medication at that time." (*Id.* at 300.) Dr. Yalkowsky also noted Plaintiff's hygiene and grooming were "grossly adequate" and that Plaintiff reported to him that she "can do her own laundry and tend to her personal care." (*Id.*) While Plaintiff stated she "does not use public transportation" or "engage in domestic activity," she "attributed this to her carpal tunnel syndrome[.]" (*Id.*) The medical evidence of record showed Plaintiff "interacted adequately with examiners" and "generally did not have marked difficulty concentrating during examinations." (*Id.*)

In a March 2017 medical assessment, Plaintiff's treating psychiatrist Dr. Jorge Quintana found Plaintiff had "poor/no ability to deal with the public, deal with work stress, maintain attention/concentration, understand, remember, and carry out complex job instructions, understand, remember and carry out detailed, but not complex job instructions, behave in an emotionally stable manner, and demonstrate reliability." (*Id.* at 304; *see also id.* at 289–92.) But Dr. Quintana also found Plaintiff had "good ability to use judgment" and "fair ability to follow work rules, relate to co-workers, interact with supervisors, function independently, understand, remember, and carry out simple job instructions, maintain personal appearance, and relate predictably in social situations." (*Id.* at 304.)

In 2021, Plaintiff sought and underwent mental health counseling at Mount Carmel Guild Behavioral Healthcare due to depressive symptoms. (*See id.* at 300, 527–41.) In an April 2021 psychiatric evaluation by Dr. Mark Gordin, Plaintiff claimed she "had been 'going through a lot lately.'" (*Id.* at 303, 532.) Plaintiff stated she had recently moved back in with her parents after breaking up with her fiancé whom she had been living with for approximately six years. (*Id.*) She reported having panic attacks once a day, with "palpitations, trouble breathing, sweating, and shaking," which she said could last from five minutes to sometimes over an hour. (*Id.* at 303.) Plaintiff also stated she had "increased feelings of depression, some suicidal ideation, trouble sleeping, and manic episodes in the past." (*Id.*) During the mental status examination, Plaintiff's "thought form/process was goal directed; memory was good; insight was good; and judgment was good"; "mood/affect was euthymic and appropriate; speech was clear; volume was normal; rate was normal; and psychomotor state was normal"; "[c]oncentration was intact; delusions were absent; [and] audio and visual hallucinations were absent." (*Id.*) Additionally, Plaintiff "was neatly dressed and groomed; suicidal ideation was absent; homicidal ideation was absent; and impulse control was good." (*Id.* at 300, 303.) Plaintiff was diagnosed with borderline personality disorder and adjustment disorder, with mixed anxiety and depressed mood. (*Id.* at 304, 530.)

At the May 19, 2022 hearing before ALJ Allard, Plaintiff testified about her conditions. (*Id.* at 302, 312–52.) Plaintiff reported a history of, and treatment for, anxiety, depression, bipolar disorder, and ADHD. (*Id.* at 302, 324–26.) Plaintiff testified she "still has anxiety and mental health problems[,]" suffers from panic attacks, has crying spells, and has experienced blackouts. (*Id.*) Plaintiff also testified she has never worked full-time; while she had some brief part-time employment in the past, she has never been able to keep a job because "her mental health problems made it too difficult to work." (*See id.* at 302, 323–24.) Further, Plaintiff testified she has taken

several medications (including Lithium and Seroquel) for her conditions but that she stopped taking medications for her symptoms in or around 2017 due to multiple adverse side effects including tremors. (*Id.* at 302, 331–33.) Plaintiff "underwent mental health counseling in 2021 due to depressive symptoms but she did not wish to continue with psychotropic medication and testified she ultimately stopped treatment." (*Id.* at 300, 331–33.) Plaintiff also testified she started exercising and meditating more. (*Id.* at 302, 332.) Additionally, Plaintiff stated she listens to music, spends time in the backyard, goes to the doctor via train or bus, and goes for walks about once a week. (*Id.* at 300, 302, 334–41.)

ALJ Allard found Plaintiff is not disabled within the meaning of the Act. (*Id.* at 297.) ALJ Allard determined Plaintiff has not engaged in substantial gainful activity since October 30, 2014 and found Plaintiff had the following severe impairments: bipolar disorder; anxiety disorder; and ADHD. (*Id.* at 298.) However, she found Plaintiff's impairments, both individually or in combination, did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1—specifically the criteria for Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders)[5]—because they "do not cause at least two 'marked' limitations or one 'extreme' limitation" in the areas of mental functioning for Plaintiff. (*Id.* at 299–301.)

---

[5] Listing 12.04 encompasses disorders "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning." 20 C.F.R. pt. 404, Subpart P, App'x 1, § 12.00(B)(3). Listing 12.06 encompasses disorders "characterized by excessive anxiety, worry, apprehension, and fear, or by avoidance of feelings, thoughts, activities, objects, places, or people." *Id.* § 12.00(B)(5). Listing 12.11 encompasses disorders "characterized by onset during the developmental period, that is, during childhood or adolescence, although sometimes they are not diagnosed until adulthood." *Id.* § 12.00(B)(9).

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI to "disabled" persons. 42 U.S.C. § 1382(a).

A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.*; *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;

11

> (5) Responding appropriately to supervision, co-workers and usual
> work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. §

404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the claimant's impairment(s) is found to be severe, the ALJ then determines

whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant

demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on

the Impairment List, the claimant has satisfied his or her burden of proof and is automatically

entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific

impairment is not listed, the ALJ will consider in his or her decision the impairment that most

closely satisfies those listed for purposes of deciding whether the impairment is medically

equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must

consider whether the combination of impairments is equal to any listed impairment. *Id.* An

impairment or combination of impairments is basically equivalent to a listed impairment if there

are medical findings equal in severity to all the criteria for the one most similar. *Williams v.*

*Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment

List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R.

§§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's
> [RFC]; (2) the ALJ must make findings of the physical and mental
> demands of the claimant's past relevant work; and (3) the ALJ must
> compare the [RFC] to the past relevant work to determine whether

> claimant has the level of capability needed to perform the past
> relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. Notably, an ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428 (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[6] requires a plaintiff to show, as to the first four steps:

---

[6] Harmless error review, which requires the appellant to demonstrate harm, applies to administrative appeals. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556

(1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g., Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at \*7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)); 42 U.S.C. § 405(g).

---

U.S. 396, 407–11 (2009), which concerned review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful[.]" *Id.* at 410.

IV.   **DECISION**

Plaintiff appeals ALJ Allard's decision and requests the Court either reverse her decision and find Plaintiff is entitled to a period of disability beginning on October 30, 2014 or, in the alternative, vacate her decision and remand for a new hearing. (ECF No. 1.) Plaintiff argues ALJ Allard's decision is essentially a reworded version of ALJ Neumann's decision, which was vacated and remanded by this Court. (ECF No. 7 at 8.) Plaintiff contends ALJ Allard ignored this Court's prior remand order, issued an RFC without rationale, ignored Plaintiff's treating and examining physicians, selectively recited the evidence, used the wrong criteria to assess the "paragraph B" criteria, and did not issue a reviewable finding for the "paragraph C" criteria. (*Id.* at 7–8.) According to Plaintiff, ALJ Allard commits the same errors, omits the same medical opinions, rejects the same psychiatric evidence from Plaintiff's treating and examining/consulting physicians, and arrives at the same mental RFC as ALJ Neumann. (*Id.* at 8–19.) Plaintiff also argues she is presumptively disabled under the relevant listings (Listings 12.04, 12.06, and 12.11) because "[s]he has marked or extreme limitations in at least two of the broad areas of mental functioning required to meet the paragraph B criteria" and the paragraph C criteria. (*Id.* at 32–33; *see also id.* at 19–35.) Plaintiff further contends substantial evidence exists to support a finding of disability and her eligibility for SSI benefits. (*Id.* at 7.) Accordingly, Plaintiff submits the Court should either reverse ALJ Allard's decision or remand this case a second time. (*Id.* at 19.)

In response, the Commissioner argues ALJ Allard's decision complies with this Court's prior remand order by "provid[ing] a more fulsome explanation of the evidence she relied on in assessing the mental RFC, recognizing that Plaintiff had remote episodes of increased symptoms of depression when she stopped taking her medication, but finding compelling her more recent examination findings and functional abilities[.]" (ECF No. 12 at 1.) The Commissioner also asserts

ALJ Allard's decision is supported by substantial evidence and that ALJ Allard "further evaluated the medical opinions" and "provid[ed] legally sound reasons for the weight she gave them, including that they were unsupported by medical findings, inconsistent with other evidence in the record, and/or were not opinions of functional limitations." (*Id.*) Accordingly, the Commissioner requests the Court affirm ALJ Allard's decision. (*Id.* at 1–2.)

The Court first addresses Plaintiff's challenge to ALJ Allard's determination under steps three and four and then addresses Plaintiff's challenge to ALJ Allard's step five determination.

### A. Plaintiff's Challenge to ALJ Allard's Step Three Determination and Step Four RFC Determination

Plaintiff argues ALJ Allard erred in steps three and four of the five-step evaluation process by omitting or rejecting relevant medical evidence showing Plaintiff is disabled under the meaning of the Act and arriving at an RFC unsupported by the record evidence. (ECF No. 7 at 8–19.) Among other things, Plaintiff contends ALJ Allard omitted and rejected portions of Dr. Yalkowsky's opinions including his opinion that Plaintiff had "significant evidence" of anxiety disorder, bipolar disorder, and ADHD and that the "impact stemming from her mental health issues is moderate to severe in nature." (*Id.* at 13, 26 (citations omitted).) Plaintiff also asserts ALJ Allard omitted a portion of Dr. Quintana's opinion stating "[P]laintiff gets easily overwhelmed and frustrated and [her] ability to understand, remember and carry out simple instructions was seriously limited but not entirely precluded." (*Id.* at 24.) Accordingly, Plaintiff argues ALJ Allard arrived at the same flawed mental RFC as ALJ Neumann and requests this Court reverse her decision or remand for further proceedings. (*Id.* at 7–19.)

In response, the Commissioner argues ALJ Allard complied with the Court's remand order to further explain Plaintiff's RFC and that substantial evidence supports ALJ Allard's decision. (ECF No. 12.) Specifically, the Commissioner contends ALJ Allard (1) "provided a more fulsome

explanation of the evidence she relied on in assessing the mental RFC, recognizing that Plaintiff had remote episodes of increased symptoms of depression when she stopped taking her medication, but finding compelling her more recent examination findings and functional abilities" and (2) further evaluated the opinions of Plaintiff's treating and examining/consulting physicians and explained her reasons for the weight she gave them, "including that they were unsupported by medical findings, inconsistent with other evidence in the record, and/or were not opinions of functional limitations." (*Id.* at 1.) The Commissioner also asserts substantial evidence supports ALJ Allard's determination that Plaintiff was not disabled under the Act. (*Id.* at 19–24.)

During step three, the ALJ compares the medical evidence of a claimant's impairments with the impairments listed in the Impairment List, which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J. 2013), *aff'd sub nom.*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in the Impairment List are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). All impairments are "defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the [Act]. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, claimants "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

Listings may be satisfied by a claimant meeting the criteria in both paragraphs A and B, or both paragraphs A and C. 20 C.F.R. pt. 404, Subpart P, App'x 1, § 12.00(A)(2). Here, the relevant listings are Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and

obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). (*See* Tr. at 299.)

Listing 12.11 has requirements listed in paragraphs A and B, and Listings 12.04 and 12.06 have

requirements listed in paragraphs A, B, and C. 20 C.F.R. pt. 404, Subpart P, App'x 1,

§ 12.00(A)(2). The paragraph B criteria for Listings 12.04, 12.06, and 12.11 are the same and

require claimants to show their mental disorder "result[s] in 'extreme' limitation of one, or

'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b). The four

"areas of mental functioning a person uses in a work setting" are: (1) understand, remember, or

apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt

or manage oneself. *Id.* Additionally, the paragraph C criteria for Listings 12.04 and 12.06 are the

same and require claimants to demonstrate their mental disorder is "'serious and persistent'; that

is, there must be a medically documented history of the existence of the disorder over a period of

at least 2 years, and evidence that satisfies the criteria in both C1 and C2." *Id.* § 12.00(A)(2)(c).

The criteria in C1 and C2 are as follows:

> b. The criterion in C1 is satisfied when the evidence shows that you
> rely, on an ongoing basis, upon medical treatment, mental health
> therapy, psychosocial support(s), or a highly structured setting(s), to
> diminish the symptoms and signs of your mental disorder (see
> 12.00D). We consider that you receive ongoing medical treatment
> when the medical evidence establishes that you obtain medical
> treatment with a frequency consistent with accepted medical
> practice for the type of treatment or evaluation required for your
> medical condition. . . .

> c. The criterion in C2 is satisfied when the evidence shows that,
> despite your diminished symptoms and signs, you have achieved
> only marginal adjustment. "Marginal adjustment" means that your
> adaptation to the requirements of daily life is fragile; that is, you
> have minimal capacity to adapt to changes in your environment or
> to demands that are not already part of your daily life. We will
> consider that you have achieved only marginal adjustment when the
> evidence shows that changes or increased demands have led to
> exacerbation of your symptoms and signs and to deterioration in
> your functioning; for example, you have become unable to function

> outside of your home or a more restrictive setting, without substantial psychosocial supports[.] . . .

*Id.* § 12.00(G)(2). "For a claimant to show his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones*, 364 at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

ALJs are not required "to use particular language or adhere to a particular format in conducting [their] analysis." *Jones*, 364 F.3d at 505. Rather, they must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* ALJs' decisions are read as a whole to determine whether they "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." *Id.* ALJs satisfy this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where [they] did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

To conclude an applicant is not disabled under the step three analysis, the ALJ must "set forth the reasons for [her] decision." *Burnett*, 220 F.3d at 119. Conclusory statements have been found to be "beyond meaningful judicial review." *Id.* In *Burnett*, the Third Circuit vacated the ALJ's decision and remanded the matter because the ALJ made "only a conclusory statement without mentioning any specific listed impairments or explaining his reasoning" which the court found was "beyond meaningful judicial review." *Id.* at 119–20. Although "conclusory statements" that an impairment does not meet a certain listing are insufficient, courts have held an ALJ's reasoning to be sufficient when the ALJ's analysis considers the specific medical requirements of the listing(s) and considers the relevant medical evidence in evaluating whether the claimant has

19

met the requirements for that listing(s). *See Parrotta v. Kijakazi*, Civ. A. No. 21-13602, 2022 WL 2289554, at *9–11 (D.N.J. June 24, 2022). An ALJ's decision at step three need not address every single piece of medical evidence in the record. *See Jose L. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-09749, 2022 WL 603001, at *5 (D.N.J. Mar. 1, 2022). ALJs are entitled to focus on the evidence they deem most probative; "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Frederick F. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-11500, 2022 WL 445538, at *2 (D.N.J. Feb. 14, 2022) (alteration in original) (quoting *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)).

In addition, "[a] treating physician's opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 807 (3d Cir. 2009) (quoting *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008)). "An opinion by a claimant's treating physician is entitled to substantial and sometimes controlling weight" but "[t]he treating physician's opinion must be supported by acceptable medical diagnostic techniques and be consistent with other substantial evidence in the case to be afforded greater or controlling weight." *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (citations omitted). "If there is contradictory medical evidence in the record, including an opinion provided by a non-treating, non-examining physician, however, the ALJ may accept the most credible medical opinion." *Id.* (citing *Plummer*, 186 F.3d at 429). Although ALJs may weigh the credibility of the evidence, they must give some indication of the evidence they reject and their reason(s) for discounting that evidence. *Burnett*, 220 F.3d at 121. ALJs "may not 'reject evidence for no reason or for the wrong reason.'" *Yensick*, 245 F. App'x at 181 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)).

Here, the Court finds substantial evidence supports ALJ Allard's step three determination

because she made specific findings and cited to specific evidence in finding the severity of Plaintiff's mental impairments, both individually and in combination, did not satisfy the paragraph B criteria for Listing 12.11 or the paragraphs B and C criteria for Listings 12.04 and 12.06. ALJ Allard first considered whether Plaintiff met the "paragraph B" criteria for the three relevant listings and explained:

> Although [Plaintiff's] mental impairments cause some limitations in understanding/remembering, the medical evidence of record generally shows no serious deficits in long-term memory, short-term memory, insight, or judgment. For example, according to the February 11, 2015 consultative psychological evaluation report by Dr. Yalkowsky, [Plaintiff's] thought processes were logical, coherent, and goal directed. She could recall 5 digits forward and 2 backward. Also, according to an April 14, 2021 mental status examination, thought form/process was goal directed; memory was good; insight was good; and judgment was good.
>
> In interacting with others, [Plaintiff] has moderate limitations. Although [Plaintiff's] mental impairments cause some limitations in interacting with others, the medical evidence of record generally shows that the [Plaintiff] interacted adequately with examiners. . . . As an adult the claimant reports that she has had arguments with her parents but [this has] not resulted in her being asked to leave the home, she has 2 friends from high school that she texts infrequently and goes for walks once per week. She reported she does not engage in social activities. She underwent mental health counseling in 2021 due to depressive symptoms but she did not wish to continue with psychotropic medication and testified she ultimately stopped treatment. Also, according to an April 14, 2021 mental status examination, the claimant's mood/affect was euthymic and appropriate; speech was clear; volume was normal; rate was normal; and psychomotor state was normal.
>
> With regard to concentrating, persisting, or maintaining pace, [Plaintiff] has moderate limitations. Although [Plaintiff's] mental impairments cause some limitations in concentration, the medical evidence of record shows that the claimant generally did not have marked difficulty concentrating during examinations. For example, according to the February 11, 2015 consultative psychological evaluation report by Dr. Yalkowsky, [Plaintiff] [] made several arithmetic errors on serial threes. She could not spell the word "world" forward or backward. Dr. Yalkowsky noted that the

claimant had "significant evidence" of ADHD based on difficulty performing clinical tasks, but also stated that the claimant had no medication at that time. Also, according to an April 14, 2021 mental status examination, concentration was intact; delusions were absent; audio and visual hallucinations were absent. . . .

As for adapting or managing oneself, [Plaintiff] has no limitations. The medical evidence of record shows [Plaintiff] did not usually have serious problems with adaptation and managing herself. Observations of treating practitioners generally show [Plaintiff] had no serious deficiencies in hygiene. For example, [Plaintiff] handles her own personal care, listened to music, assisted with house keeping when she felt up to it, goes for walks and reports she has used public transportation independently and she uses a telephone application to shop for groceries. [Plaintiff] reported to Dr. Yalkowsky that she does not use public transportation and does not engage in domestic activity, but attributed this to her carpal tunnel syndrome; she reported that she can do her own laundry and tend to her personal care . . . Also, according to an April 14, 2021 mental status examination, the claimant was neatly dressed and groomed; suicidal ideation was absent; homicidal ideation was absent; and impulse control was good.

(*Id.* at 299–300 (citations omitted).)

ALJ Allard similarly considered whether the "paragraph C" criteria were satisfied for

Listings 12.04 and 12.06 and concluded:

[T]he evidence fails to establish the presence of the "paragraph C" criteria because medical treatment diminishes the signs of [Plaintiff's] mental disorders, and [Plaintiff] has more than minimal capacity to adapt to changes in her environment. The medical evidence does not show such marginal adjustment that [Plaintiff] has minimal capacity to adapt to changes in the environment or some new demands. It does not show that simple changes or increased demands have led to a deterioration of [Plaintiff's] functioning or inability to function outside the home.

(*Id.* at 301.)

Because ALJ Allard found Plaintiff failed to satisfy the criteria of the relevant listings, she

continued with an assessment of Plaintiff's RFC during the relevant period. (*Id*. at 301–05.) After

evaluating all the evidence in the record, ALJ Allard determined Plaintiff has the RFC "to perform

a full range of work at all exertional levels" but with certain non-exertional limitations—namely, that Plaintiff "can understand and execute simple and routine tasks" and "can have occasional contact with coworkers, supervisors[,] and the public, but cannot perform tasks that involve direct customer service." (*Id.* at 301.) ALJ Allard's process in determining Plaintiff's RFC was twofold: first, she considered whether there was an underlying medically determinable mental impairment that could reasonably be expected to produce Plaintiff's claimed symptoms; and second, she evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms to determine whether, and the extent to which, they limit Plaintiff's work-related activities, based upon objective medical evidence and other evidence available in the record, as well as opinion evidence in accordance with the requirements of 20 C.F.R. 416.927. (*Id.*)

ALJ Allard considered all the evidence in the record—including Plaintiff's testimony, Plaintiff's medical records, prior administrative medical findings, the opinions of Plaintiff's treating and examining/consulting physicians, a vocational expert's testimony, and a third-party function report from Plaintiff's mother—and concluded Plaintiff was not disabled within the meaning of the Act. (*Id.* at 297–306.) ALJ Allard found Plaintiff's "medically determinable impairments reasonably could be expected to cause symptoms and limitations" but concluded that to the extent Plaintiff alleges "the intensity, persistence, and limiting effects of her conditions result in disability, this is not consistent with the evidence in the record." (*Id.* at 302.)

In reaching her conclusion, ALJ Allard found the opinions of the agency consultants Fierstien and Dr. Starace merited partial weight, as they examined, and based their opinions on, Plaintiff's available medical records, but they did not have the opportunity to personally examine Plaintiff or review her more recent medical records. (*Id.* at 304.) ALJ Allard found Dr. Yalkowsky's opinion also merited partial weight because it was based on personally examining

Plaintiff, but his examination was a one-time evaluation of Plaintiff and he did not specifically opine as to Plaintiff's "abilities and limitations in each area of mental functioning." (*Id.*) ALJ Allard found Dr. Quintana's opinions merited little weight because his opinions were "expressed by checking boxes on a form, without a clear rationale for each limitation expressed" and he "did not include or cite specific supporting evidence from treatment records." (*Id.*) Additionally, ALJ Allard found Dr. Quintana's assessment to be inconsistent with other medical record evidence, which reflected outside of remote crisis episodes, Plaintiff had normal mental status examinations. (*Id.*) ALJ Allard also gave some weight to a third-party function report from Plaintiff's mother, to the extent it was consistent with Plaintiff's medical records, since it was based on personally observing Plaintiff. (*Id.* at 304–05.)

The Court finds ALJ Allard did not err in finding Plaintiff was not disabled under the Act or in determining Plaintiff's RFC. Unlike ALJ Neumann who Judge Chesler found arrived at an RFC determination that "failed entirely to reflect the findings of Plaintiff's treating psychiatrist, having rejected them, nullified the findings of the consultative examiner, and relied on the opinion of an agency reviewer who did not review the complete record and whose final assessment is contradicted by his findings" (Tr. at 388), ALJ Allard arrived at an RFC that considered and reflected the findings and opinions of Plaintiff's treating and examining/consulting physicians and explained how she weighed that evidence and why she credited some opinions over others. In other words, she did not reject evidence for no reason or for the wrong reason. To the extent ALJ Allard did not explicitly consider specific details of certain reports, this is not reversible error, as her decision only needs to be supported by substantial evidence. *See Jose L.*, 2022 WL 603001, at *5; *Frederick F.*, 2022 WL 445538, at *2 (citation omitted).

On appeal, Plaintiff must show that (1) an error occurred; and (2) but for that error, she

might have proven her disability. *See Holloman*, 639 F. App'x at 814. If Plaintiff believes an error was made, she "must clearly identify the error and explain how the error actually 'affect[ed] [his or her] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki*, 556 U.S. at 407). Here, Plaintiff claims ALJ Allard unjustifiably omitted and/or rejected relevant medical evidence supporting a finding that Plaintiff is disabled, but she does not state how the outcome would have been different had ALJ Allard explicitly included that evidence in her written decision. Even if the Court found ALJ Allard erred, Plaintiff does not state how she was harmed by the supposed error. Plaintiff bears the burden of proof for step four and has failed to meet that burden here. ALJ Allard considered all medical evidence in the record, weighed each as she found appropriate, and explained how and why she arrived at her decision. She considered and incorporated into her reasoning and analysis Plaintiff's testimony, Plaintiff's treatment history, Plaintiff's available medical records,[7] and the opinions and findings of Plaintiff's treating and examining/consulting physicians, which are consistent with her decision.[8] Plaintiff's disagreement

---

[7] While Plaintiff asserts Dr. Quintana has been her treating psychiatrist for more than five years (*see* ECF No. 7 at 24), it appears the only record ALJ Allard had from Dr. Quintana was the March 2017 medical assessment (*see* Tr. at 293–311). It is possible that additional records from Dr. Quintana could have led ALJ Allard to a different determination, but "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews*, 239 F.3d at 594.

[8] Contrary to Plaintiff's argument, ALJ Allard did consider portions of Dr. Yalkowsky's opinion as she noted the following: (1) "Dr. Yalkowsky noted that [Plaintiff] had 'significant evidence' of ADHD based on difficulty performing clinical tasks"; (2) "With respect to [Plaintiff's] bipolar disorder; anxiety disorder; and ADHD, the record reflects that these are severe impairments and [Plaintiff] has some resulting limitations"; (3) Plaintiff "has the following severe impairments: bipolar disorder; anxiety disorder; and [ADHD] . . . . [T]he record medical evidence supports a finding that the above-listed impairments are medically determinable and severe impairments that significantly limit [Plaintiff's] ability to perform basic work activities"; and (4) "The overall record reflects that [Plaintiff] has severe mental limitations[.]" (Tr. at 298–300, 302, 304.) ALJ Allard also considered Dr. Quintana's opinion, noting: "According to the March 6, 2017 medical assessment of ability to do work-related activities by Dr. Jorge Quintana, MD (Exhibit 5F): [Plaintiff] has good ability to use judgment. [Plaintiff] has fair ability to follow work rules, relate

with ALJ Allard's conclusion does not compel reversal here. ALJ Allard's decision is based on "more than a mere scintilla of evidence." *Newell*, 347 F.3d at 545. ALJ Allard considered the elements of paragraphs B and C of the relevant listings, considered and weighed all the medical evidence in the record to determine if Plaintiff met these requirements, and based her RFC determination on substantial evidence. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *see also Hartranft*, 181 F.3d at 360.

Therefore, the Court affirms ALJ Allard's determinations in steps three and four of the five-step evaluation process.

**B. Plaintiff's Challenge to ALJ Allard's Step Five Determination**

Plaintiff also argues ALJ Allard, at step five of the five-step evaluation process, failed to consider certain portions of the vocational expert's testimony and her hypothetical questions to the vocational expert did not adequately encompass all of Plaintiff's limitations. (ECF No. 7 at 11–12, 33–34.) Specifically, Plaintiff argues ALJ Allard omitted the following portions of the vocational expert's testimony suggestive of finding disability:

> • The performance of these jobs required 90% on task performance
> • No more than one absence or late arrival per month would be tolerated after a 30-60 day probationary period in which no absences or late arrivals would be tolerated

---

to co-workers, interact with supervisors, function independently, understand, remember, and carry out simple job instructions, maintain personal appearance, and relate predictably in social situations. [Plaintiff] has poor/no ability to deal with the public, deal with work stress, maintain attention/concentration, understand, remember, and carry out complex job instructions, understand, remember, and carry out detailed, but not complex job instructions, behave in an emotionally stable manner, and demonstrate reliability (Exhibit 5F).") (*Id.* at 304.) While Plaintiff argues ALJ Allard did not explicitly reference a few specific statements from these two doctors, that does not mean ALJ Allard did not consider those statements. ALJs are not required to list or discuss every piece of evidence in the record. *See Jose L.*, 2022 WL 603001, at *5; *Frederick F.*, 2022 WL 445458, at *2 (citation omitted).

> • The performance of the jobs required on task concentration and attention no less than 54 minutes of every working hour

(*Id.* at 33–34 (citing Tr. at 348–50).) Plaintiff also contends ALJ Allard erred by: (1) not referencing "[P]laintiff's 'moderate limitations' in applying information, interacting with others or maintaining concentration and a normal pace" to the vocational expert in her hypothetical questioning, and (2) "not attempt[ing] to square these moderate limitations in these three critical areas of mental functioning with the mental RFC finding." (*Id.* at 11, 34.)

The Commissioner does not specifically address Plaintiff's argument with respect to the ALJ's hypothetical questioning of the vocational expert but asserts substantial evidence supports ALJ Allard's determination regarding Plaintiff's RFC and that Plaintiff is able to perform certain jobs widely available in the national economy. (*See* ECF No. 12.) At Plaintiff's hearing before ALJ Allard, an impartial vocational expert testified that a hypothetical individual with the same RFC as Plaintiff could perform the requirements of certain representative occupations such as a housekeeper (unskilled work with an SVP of 2), "performed at a light exertional level, with about 219,000 jobs nationally"; a hand packager (unskilled work with an SVP of 2), "performed at a medium exertional level, with about 80,000 jobs nationally"; and a document preparer (unskilled work with an SVP of 2), "performed at a medium exertional level, with about 19,000 jobs nationally." (Tr. at 305–06.) ALJ Allard determined the vocational expert's conclusion was reasonable and consistent with Plaintiff's RFC and was "consistent with the information contained in the Dictionary of Occupational Titles." (*Id.* at 306.) The Commissioner states ALJ Allard, relying on vocational expert testimony, "found that Plaintiff could perform other work that existed in significant numbers in the national economy, including the representative unskilled, light job of housekeeper; and the representative unskilled, medium jobs of hand packager and document preparer." (*Id.* at 10 (citing Tr. at 305–06).) The Commissioner contends Plaintiff's arguments

should be rejected because ALJ Allard "considered the entire record, reasonably explained that the majority of the clinical signs during the relevant period were unremarkable, and appropriately considered the nonmedical evidence[.]" (*Id.* at 23–24.)

The final step of the five-step analysis requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; *see also* 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled."). The ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263. "The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; *see also* 20 C.F.R. § 404.1523. ALJs often determine this with the assistance of a vocational expert. *Plummer*, 186 F.3d at 428 (citation omitted). "A hypothetical posed to a vocational expert should include 'all of a claimant's credibly established limitations.'" *Thomas v. Comm'r Soc. Sec.*, 819 F. App'x 90, 92 (3d Cir. 2020) (quoting *Rutherford*, 399 F.3d at 554). "If an uncontroverted medical opinion suggests a limitation, the ALJ must include it in the hypothetical before giving the vocational expert's opinion weight." *Id.* "'Fairly understood, [the] reference [] to *all* impairments . . . means that the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations* [,]' not every alleged impairment." *Myers v. Comm'r of Soc. Sec.*, 340 F. App'x 819, 821 (3d Cir. 2009) (alterations in original) (quoting *Rutherford*, 399 F.3d at 554). The ALJ "has discretion to assess the credibility of '[l]imitations that are medically supported but are

also contradicted by other evidence in the record.'" *Thomas*, 819 F. App'x at 92. "And hypotheticals need not include 'every impairment alleged by a claimant.'" *Id.*; *see also Wanda R. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-12273, 2022 WL 522796, at *8 (D.N.J. Feb. 22, 2022) ("A hypothetical question need only reflect those credibly established functional limitations that are supported by the record. The Third Circuit requires that 'limitations that are supported by medical evidence and are "otherwise uncontroverted in the record" must be included in the ALJ's hypothetical,' but 'does "not require an ALJ to submit to the [vocational expert] every impairment *alleged* by a claimant." Rather, the ALJ is only required to submit credibly established limitations.'" (citations omitted)).

Here, the Court finds ALJ Allard's hypothetical questions to the vocational expert included all of Plaintiff's credibly established limitations. The Court also finds substantial evidence supports ALJ Allard's determination of Plaintiff's RFC and that Plaintiff is able perform certain unskilled jobs widely available in the national economy. ALJ Allard considered and assessed medical evidence in the record and concluded that while Plaintiff has some moderate limitations, she can understand and execute simple and routine tasks, and that, accounting for Plaintiff's limitations, certain unskilled jobs Plaintiff can perform are widely available in the national economy. ALJ Allard was permitted to weigh and credit Plaintiff's medical evidence as appropriate, which she did.[9] *See Yensick*, 245 F. App'x at 181. Plaintiff argues ALJ Allard's RFC determination and

---

[9] *See* Tr. at 299–302 ("The medical evidence of record reflects that, in understanding, remembering, or applying information, [Plaintiff] has moderate limitations. Although [Plaintiff's] mental impairments cause some limitations in understanding/remembering, the medical evidence of record generally shows no serious deficits in long-term memory, short-term memory, insight, or judgment[.] . . . In interacting with others, [Plaintiff] has moderate limitations. Although [Plaintiff's] mental impairments cause some limitations in interacting with others, the medical evidence of record generally shows that [Plaintiff] interacted adequately with examiners[.] . . . With regard to concentrating, persisting, or maintaining pace, [Plaintiff] has moderate limitations. Although [Plaintiff's] mental impairments cause some limitations in concentration, the medical

hypothetical questions to the vocational expert did not account for her moderate limitations in applying information, interacting with others, and maintaining concentration and a normal pace, but ALJ Allard did account for these limitations by considering Plaintiff's moderate limitations in these areas and finding Plaintiff could have occasional contact with coworkers, supervisors, and the public but could not perform tasks involving direct customer service. *See supra* n.9; Tr. at 299–306. ALJ Allard acknowledged Plaintiff's limitations and accounted for these limitations in determining Plaintiff's RFC and the types of jobs Plaintiff could perform, finding Plaintiff could perform only simple and routine tasks, not complex or detailed tasks, consistent with the medical record evidence. *See id.* Therefore, the Court affirms ALJ Allard's determination in step five of the five-step evaluation process.

Plaintiff also claims ALJ Allard erred in omitting certain portions of the vocational expert's testimony that the unskilled jobs potentially require "90% on task performance," "no more than one absence or late arrival per month," and/or "task concentration and attention no less than 54 minutes of every working hour." (*See* ECF No. 7 at 33–34 (citing Tr. at 348–50).) However, even assuming *arguendo* this was erroneous, Plaintiff has not established that substantial evidence does not support ALJ Allard's decision, notwithstanding this omission from ALJ Allard's written

---

evidence of record shows that [Plaintiff] generally did not have marked difficulty concentrating during examinations[.] . . . As for adapting or managing oneself, [Plaintiff] has no limitations. The medical evidence of record shows [Plaintiff] did not usually have serious problems with adaptation and managing herself. . . . After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] can understand and execute simple and routine tasks. [Plaintiff] can have occasional contact with coworkers, supervisors; and the public, but cannot perform tasks that involve direct customer service. . . . I find that [Plaintiff's] medically determinable impairments reasonably could be expected to cause symptoms and limitations. However, to the extent that [Plaintiff] alleges that the intensity, persistence, and limiting effects of her conditions result in disability, this is not consistent with the evidence in the record." (citations omitted)).

decision. *See, e.g.*, *Titterington v. Barnhart*, 174 F. App'x 6, 7–9 (3d Cir. 2006) (affirming district court's decision upholding an ALJ's determination that a claimant was not disabled within the meaning of the Act, finding that the ALJ's determination was supported by substantial evidence, notwithstanding a vocational expert's testimony that a hypothetical individual like claimant who had "dizzy spells two to three times a week (each requiring the individual to be off task between thirty minutes and two hours) could not perform any job in the national economy on a full-time basis").

Therefore, the Court affirms ALJ Allard's decision.

### V.   CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Allard erred in determining Plaintiff was not entitled to SSI benefits under the Act. Therefore, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

**Dated:** March 27, 2024